Randy P. Catalano, Esquire
401 Kings Hwy. South
Suite 4A
Cherry Hill, NJ 08034
P(856)281-9860
F(856)281-9859
*Attorney for Plaintiff Rosamund A. Wolfgramm*

| | |
|---|---|
| ROSAMUND A. WOLFGRAMM<br><br>Plaintiff<br><br>v.<br><br>COMMUNICATION WORKERS OF AMERICA LOCAL 13301, COMMUNICATION WORKERS OF AMERICA DISTRICT 2-13, BARBARA TOBIN, DENNIS EICHFELD, EDWARD MOONEY, PRESIDENT OF THE CWA DIST 2-13, BETH NORTON, OLYMPIA COLASANTE, j/s/i/, in their individual and official capacities, John Does (1-20) fictitious names of CWA Local 13301 and/or CWA District 2-13 who participated in the handling of Plaintiff's case); ABC Corporations (1-10) fictitious names of companies, organizations, entities who were part of the CWA Local 13301 and/or District 2-13 | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY CAMDEN VICINAGE<br><br>CIVIL ACTION<br><br>DOCKET #<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff, Rosamund A. Wolfgramm, residing in Voorhees, NJ by way of Complaint against the Defendants says the following:

**JURISDICTION AND VENUE**

1. This federal court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331. This case is brought under Title VII of the Civil Rights Act for Discrimination based upon race, national origin, color, and sex.

1

2. This court has pendent jurisdiction of the State Law Claims plead herein pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District Court of New Jersey because at all relevant times alleged in this Complaint, Plaintiff has been a resident of the state of New Jersey, County of Camden.

**PARTIES**

4. Plaintiff, Rosamund Wolfgramm, is a female over the age of 40, Asian-Pacific Islander, suffers from a medical condition which qualifies as a disability under the ADA and the NJLAD.

5. Defendant CWA Local 13301 - is the Communications Workers of America Union Local 13301 to which, at all relevant times alleged in this complaint, Plaintiff was a member.

6. Defendant CWA District 2-13 is the Communications Workers of America District office under which CWA Local 13301 reports.

7. Defendant Barbara Tobin is a Caucasian female, who at all relevant times alleged in this complaint was the President of CWA Local 13301.

8. Defendant Eichfeld is a Caucasian male, who at all relevant times alleged in the complaint was the CWA Local 13301 Union Vice-President.

9. Beth Norton is a Caucasian female, who was an employee of American Airlines, and acting within the course and scope of her job duties and responsibilities. At all relevant times alleged in the Complaint, Norton was the Director over the Plaintiff.

10. Defendant Olympia Colasante, was at all relevant times alleged in this Complaint the Vice President of Operations for the Philadelphia International Airport where the Plaintiff and the other individually named Defendants were employed.

11. John Does (1-20) fictitious names are unknown individuals who were representatives/agents/employees of CWA Local 13301 and/or CWA District 2-13who participated in the handling of Plaintiff's case.

12. ABC Corporations (1-10) fictitious names of companies, organizations, entities who were part of the CWA Local 13301 and/or District 2-13, and/or CWA generally, and the organization in which Plaintiff was a member.

## **FACTS**

13. Plaintiff repeats and realleges the contents of all preceding paragraphs as if set forth at length herein.

14. Plaintiff is a female, Asian-Pacific Islander, over the age of 40, and at all material times alleged in this Complaint, was an employee of American Airlines, Inc.

15. At all material times alleged in this Complaint, Plaintiff was and is an individual whop suffers from medical conditions which are known to qualify as a disability under the ADA, and NJLAD.

16. At all material times alleged in this Complaint, Plaintiff's employer, American Airlines, Inc. was on notice of Plaintiff's disability.

17. Prior to Plaintiff's wrongful termination, Plaintiff had no prior disciplinary history with American Airlines.

18. At all times material to the claims set forth in this Complaint, Plaintiff was a Sr. Customer Service representative with AA.

19. At all times material to the claims set forth in this Complaint, Defendant Tobin, a Caucasian female was the CWA Local President.

20. At all times material to the claims set forth in the Complaint, AA was bound to follow the terms and requirements under its own Drug Policy.

21. At all times material to the claims set forth in the Complaint, AA was also bound to follow the terms, conditions, and requirements under the DOT Drug testing and reporting regulations for all drug tests performed for a DOT requirement.

22. At all times material to the claims set forth in the Complaint, Plaintiff was afforded the rights, protections and terms of employment contained in the Collective Bargaining Agreement ("CBA"), that was effective December 1, 2015.

23. At all times material to the claims set forth in the Complaint, the Local was required to enforce the terms and conditions of the Plaintiff's employment under the CBA.

24. At all times material to the claims set forth in the Complaint, the District was required to enforce the terms and conditions of the Plaintiff's employment under the CBA.

25.     At all times material to the claims set forth in the Complaint, the CBA contained the requirements, time frames, procedures and other rights afforded to Plaintiff in her employment with AA.

26.     Beginning in early January 2017, Plaintiff was forced to go out on a disability leave.  Plaintiff was fully compensated during the time she was on disability.

27.     In or around June 2017, Plaintiff was cleared to return to work in her capacity as a Sr. Customer Service Representative at the Philadelphia airport.  However, due to the length of time Plaintiff had been out of work, she could not physically return to the position until certain baclground and security checks had been performed.

28.     Plaintiff returned to the physical job site in her capacity as Sr. Customer Service Representative in July 2017.  After returning to the job site, Plaintiff still had other security classes and clearances to pass to obtain all of the credentials she had prior to her disability.

29.     On or about August ___, 2017, as part of one of the clearance requirements, Plaintiff voluntarily took a urine test for the _____ credential.  That credential is authorized through the federal Department of Transportation ("DOT").  As such, the DOT rules and regulations regarding drug testing and reporting are **required** to be followed.

30. As a result of the August ___, 2018 drug test, the Medical Review Officer ("MRO") improperly reported the drug test result as "verified positive" for a banned substance.[1]

31. Prior to reporting the drug test result as "positive", the MRO who is an agent/servant/employee of AA failed to follow the very specific steps and documentation required under 49 CFR § 40.131.

32. The MRO who is an agent/servant/employee of AA failed to properly document the "attempts" to reach Plaintiff to request additional information and/or medical records to explain the "positive" result.

33. The AA representative within the Philadelphia Airport also failed to follow the steps and requirements under 49 CFR § 40.131 as far as notification and documentation of communication and/or attempted communication with the Plaintiff regarding the alleged "positive" result.

34. No provision of 49 CFR § 40.131 permits the MRO to terminate the Plaintiff or any employee without receiving the medical documentation regarding any "plausible" explanation for the alleged positive result.

35. No provision of 49 CFR § 40.131 permits the Company (AA) to terminate the Plaintiff or any employee without receiving the medical documentation regarding any "plausible" explanation for the alleged positive result.

---

[1] The banned substance was NOT an illicit drug. Rather the banned substance was contained in a medication that Plaintiff was regularly prescribed, even long prior to this August 2017 drug test.

6

36. Despite the fact that the MRO claims to have attempted to reach Plaintiff directly by telephone, most of the dates when the MRO, who is located in Utah called Plaintiff's cell phone, she was **at work**, on the job, where she is not permitted to have her cell phone.

37. At no time prior to her termination did a representative of AA ever contacted Plaintiff to inform her that the MRO and/or "Designated Employer Representative" ("DER") need to see her over medical documentation.

38. After the end of August 2017, the week following up through the date that Plaintiff was terminated, she was out of work on a *pre-approved* vacation which was out of the NJ/PA area.

39. The dates that Plaintiff was working from the date of the August __, 2017 drug test, up through the date she was terminated, September 11, 2017 is clearly documented in AA records.

40. The dates that Plaintiff was on vacation from the date of the August __, 2017 drug test, up through the date she was terminated, September 11, 2017 is clearly documented in AA records.

41. No representative of AA ever informed the MRO and/or vice versa as to the fact that Plaintiff was at work, and could be reached through the "normal channels", where the local DER representative contacts the employee.

42. No representative of AA ever informed the MRO and/or vice versa as to the fact that Plaintiff was on vacation from September 1-11, 2017.

43. The first contact Plaintiff had from either the MRO and/or the AA representative was the notice that she had been terminated for a "positive" drug test result.

44. No provision of permits the MRO and/or the AA representative to terminate an employee for a positive drug test result without requesting and/or receiving the medical records to substantiate the "plausible" explanation.

45. The federal regulations only permit the MRO and/or the AA representative to place the employee on the "medically ineligible" list.

46. Neither the MRO not the AA representative placed Plaintiff on the "medically ineligible" list.

47. The federal regulations applicable to this case require the Company and/or the MRO to attempt to reach the employee by any/all reasonable means. The regulation spells out the *minimum* requirements.

48. Neither the MRO nor the AA representative sent any emails, texts, or written letters to Plaintiff to communicate over the alleged "positive" findings.

49. The MRO improperly certified the test as "positive".

50. The AA representative failed to take the appropriate required steps to notify the Plaintiff and to place her on "medically ineligible" status.

51. On September 11, 2017, Norton terminated Plaintiff without the proper documentation and without confirming that all of the required steps had been followed.

52. On September 11, 2017, Plaintiff was notified via a phone call that she had been terminated.

53. On September 12, 2017, Plaintiff received a FEDEX envelope from AA informing her that she had been terminated for a "positive" drug test result.

54. No communication provided to Plaintiff ever indicated what the alleged "banned" substance was.

55. The Local filed a grievance with AA over the wrongful termination. Plaintiff was never shown the grievance prior to its submission, and did not ever sign the grievance form.

56. The grievance was served upon Defendant Norton on September 12, 2017.

57. The grievance contained a general grievance over the Plaintiff's termination, but did not contain any information about the improper reporting of the drug test as "positive".

58. It is common knowledge, and in fact, the CWA provides written literature to shop stewards and members indicating that the deadlines in the CBA are to be strictly enforced and met.

59. The CBA in effect during the relevant times of this termination and subsequent grievance also contained specific language regarding the enforcement of the time frames contained therein.

60. The Local, and in particular, Barbara Tobin failed to enforce the time requirements contained in the CBA for the hearing of Plaintiff's grievance.

61. The Local, and in particular, Tobin and Eichfeld attempted to restrict Plaintiff's rights under the CBA by informing her that no stenographic record of the grievance hearing was permitted.

62. The Local, and in particular, Tobin and Eichfeld, in violation of the CBA, refused to permit Plaintiff to be represented by her shop steward, Byron _____, who is also a minority.

63. The Local, and in particular Tobin and Eichfeld, refused to permit Plaintiff to have counsel present claiming it was a violation of the "bylaws". The "by laws" contain no prohibition of counsel.

64. Through her counsel, prior to filing an EEOC complaint, Plaintiff notified Edward Mooney, President of CWA District ____ regarding the irregularities in the representation of her grievance.

65. Defendant Mooney and CWA District ___ then backed the actions of Tobin.

66. Plaintiff informed Defendant Mooney and CWA District ___, in writing that she was being discriminated against, and treated differently than Caucasian members who actually **had** failed a drug test.

67. Plaintiff informed Tobin and Eichfeld that she was being discriminated against and treated differently than Caucasian members who actually **had** failed a drug test.

68. The District took no action on Plaintiff's behalf to correct the deficiencies in the representation and/or the grievance.

69. The Local, and in particular Tobin and Eichfeld took no action to correct the deficiencies in the representation and/or the grievance.

70. At all times material to the allegations contained in this complaint, AA was on notice that Plaintiff suffered from a medical disability as defined by the ADA, Title VII and NJLAD.

71. As a result of the unfair and discriminatory practices the CWA Local was imposing upon Plaintiff, she filed a Complaint with the EEOC.

72. As a result of the unfair practices the CWA District was imposing upon Plaintiff, she filed a Complaint with the EEOC.

73. Plaintiff received a "right to sue" letter dated May 29, 2018. Plaintiff did not receive the May 29, 2018 letter until June 1, 2018.

74. At all material times alleged herein, AA was an employer with more than 10,000 employees.

75. At all material times alleged herein, CWA Local, CWA District (collectively CWA) is and was a "labor organization" as defined Title VII.

## COUNT ONE
## DISCRIMINATION UNDER TITLE VII

76. Plaintiff repeats and realleges the contents of all preceding paragraphs as if set forth at length herein.

77. Title VII prohibits a labor organization from discriminating against an individual because of her race, color, religion, sex or national origin.

78. As indicated infra, Plaintiff is a minority woman who is Asian-Pacific Islander, over the age of 40, and an individual, who was, at all relevant

11

times alleged herein a person diagnosed with a disability under ADA and NJLAD.

79. Tobin was at all material times alleged herein the President of the CWA Local, and Caucasian.

80. Eichfeld was at all material times alleged herein the Vice President of the CWA Local, and Caucasian.

81. Tobin oversaw and directed the prosecution of Plaintiff's termination grievance.

82. Eichfeld was the representative who prosecuted Plaintiff's termination grievance as directed and within the oversight of Tobin.

83. Prior to Plaintiff filing the EEOC Complaint, both Tobin and Eichfeld had actual notice of the defects in the prosecution Plaintiff's grievance.

84. Prior to Plaintiff filing the EEOC Complaint, both Tobin and Eichfeld had actual knowledge of the handling of "positive" drug test findings for Caucasian members.

85. Prior to the filing of the EEOC Complaint, Defendant Mooney had actual knowledge of the defects in the prosecution Plaintiff's grievance.

86. Prior to the filing of the EEOC Complaint, Defendant Mooney had actual knowledge of the disparate treatment Plaintiff was complaining of in the handling and prosecution of her termination grievance.

87. Prior to the filing of the EEOC Complaint, Tobin and Eichfeld, jointly, severally, individually, in concert and in the alternative discriminated against Plaintiff based upon her skin color, and national origin/race.

88. Prior to the filing of the EEOC Complaint, Defendant Mooney acquiesced in, and defended the discriminatory actions of Tobin and/or Eichfeld in the handling and/or prosecution of Plaintiff's grievance.

89. Defendants Tobin and Eichfeld, jointly, severally, individually, in concert and in the alternative manipulated the terms of the CBA, failed to enforce the timelines in the CBA, fabricated provisions of the CBA and Bylaws to prevent Plaintiff from being properly represented all based upon Plaintiffs race, skin color, and/or national origin.

90. At all material times alleged in Plaintiff's Complaint up to the present time, Defendant Mooney and/or CWA District acquiesced in the discriminatory treatment of Plaintiff, and in fact ratified the discriminatory actions of Tobin and Eichfeld.

91. The aforesaid discrimination suffered by Plaintiff was intentional as defined by Title VII and the case law interpreting Title VII.

92. As a direct and proximate result of the aforesaid discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiff demands judgment against the Defendants jointly, severally, individually, and in the alternative for compensatory damages, punitive damages, counsel fees, costs of suit, pre and post judgment interest, and other such relief as the Court may deem equitable and just.

### COUNT TWO
### NJLAD

93. Plaintiff repeats and realleges the contents of all preceding paragraphs as if set forth at length herein.

94. Plaintiff is a member of at least one protected class under the New Jersey Law Against Discrimination in that Plaintiff is over 40 years of age, Asian-Pacific Islander, brown-skinned, and suffers from a disability as defined by the statute.

95. At all material times alleged herein, Plaintiff was a resident of the State of New Jersey, County of Camden.

96. The Defendants Tobin, Eichfeld and Mooney, jointly, severally, individually, in concert and in the alternative discriminated against Plaintiff based upon her protected characteristics.

97. The Defendants Tobin, Eichfeld and Mooney, jointly, severally, individually, in concert and in the alternative intentionally treated Plaintiff differently and less favorable that similarly situated Caucasian members of the union.

98. The Defendants Tobin, Eichfeld and Mooney, jointly, severally, individually, in concert and in the alternative intentionally acted to deprive Plaintiff of her rights under the CBA.

99. The Defendants Tobin, Eichfeld and Mooney, jointly, severally, individually, in concert and in the alternative each actively participated in the discrimination against Plaintiff, or in the alternative acquiesced and ratified the discriminatory treatment against Plaintiff.

100. Each of the Defendants failed to stop the discrimination against Plaintiff.

101. As a direct and proximate result of the aforesaid discrimination, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE,** Plaintiff demands judgment against the Defendants jointly, severally, individually, and in the alternative for compensatory damages, punitive damages, counsel fees, costs of suit, pre and post judgment interest, and other such relief as the Court may deem equitable and just.

Dated: August 29, 2018          /s/Randy P. Catalano, Esquire

### DESIGNATION OF TRIAL COUNSEL

Randy P. Catalano, Esquire is hereby designated as trial counsel in the above matter.

Dated: August 29, 2018          /s/Randy P. Catalano, Esquire